**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF INDIANA
NEW ALBANY DIVISION**

| | | |
|---|---|---|
| **ABC IP, LLC, a Delaware limited liability company,** | ) ) ) | CASE NO. 4:26-CV-00162 |
| **and** | ) ) | **COMPLAINT FOR PATENT INFRINGEMENT** |
| **RARE BREED TRIGGERS, INC., a Texas corporation,** | ) ) ) | |
| **Plaintiffs.** | ) ) | **JURY TRIAL DEMANDED** |
| **v.** | ) ) | |
| **One Horse LLC, an Indiana limited liability company,** | ) ) ) | |
| **and** | ) ) | |
| **Jeremy Hammons, an individual,** | ) ) | |
| **Defendants.** | ) | |

This is an action for patent infringement in which ABC IP LLC ("ABC") and Rare Breed Triggers, Inc. ("Rare Breed") (collectively, "Plaintiffs") accuse One Horse LLC and Jeremy Hammons (collectively, "Defendants") of infringing U.S. Patent Nos. 12,038,247, 12,031,784, 12,578,159, and 12,636,403 as follows:

## PARTIES

1.      ABC is a limited liability company organized under the laws of the State of Delaware with an address at 8 The Green, Suite A, Dover, Delaware 19901.

2.      Rare Breed is a Texas corporation having a place of business at 2710 Central Freeway, Suite 150-151, Wichita Falls, TX 76306.

3. Upon information and belief, One Horse LLC is a limited liability company organized under the laws of Indiana with an address of 200 North Front St., Brownstown, IN 47220.

4. Upon information and belief, Jeremy Hammons is an individual residing in Brownstown, Indiana, who is the CEO of One Horse LLC and directs its operations, including directing One Horse LLC to sell products in violation of the Asserted Patents.

## JURISDICTION AND VENUE

5. This is an action for patent infringement arising under 35 U.S.C. §§ 271(a)–(c), 281, and 284–85.

6. This Court has subject matter jurisdiction over this action under 28 U.S.C. § 1338, which directs that United States District Courts shall have original jurisdiction of any civil action arising under any Act of Congress relating to patents and pursuant to 28 U.S.C. § 1331, which pertains to civil actions arising under the laws of the United States.

7. Personal jurisdiction over Defendants is proper in this District because the Defendants reside in and have a regular and established place of business in this District.

8. Venue is proper in this district pursuant to 28 U.S.C. § 1400(b). Defendants reside in or have committed acts of infringement and have a regular and established place of business in this District.

## BACKGROUND

9. This lawsuit asserts direct, contributory, and induced infringement of U.S. Patent 12,038,247, 12,031,784, 12,578,159, and 12,636,403.

10. The '247 Patent was lawfully and properly issued by the United States Patent and Trademark Office on July 16, 2024. Each and every claim of the '247 Patent is valid and enforceable. A true and correct copy of the '247 Patent is attached as Exhibit A.

11.     The '784 Patent was lawfully and properly issued by the United States Patent and Trademark Office on July 9, 2024. Each and every claim of the '784 Patent is valid and enforceable. A true and correct copy of the '784 Patent is attached as Exhibit B.

12.     The '159 Patent was lawfully and properly issued by the United States Patent and Trademark Office on March 17, 2026. Each and every claim of the '159 Patent is valid and enforceable. A true and correct copy of the '159 Patent is attached as Exhibit C.

13.     The '403 Patent was lawfully and properly issued by the United States Patent and Trademark Office on May 26. 2026. Each and every claim of the '403 Patent is valid and enforceable. A true and correct copy of the '403 Patent is attached as Exhibit D.

14.     ABC is the current owner by assignment of all right, title and interest in and to the Asserted Patents. These assignments have been recorded at the United States Patent and Trademark Office ("USPTO").

15.     Rare Breed is the exclusive licensee of the Asserted Patents.

16.     Plaintiffs have complied with the requirements of 35 U.S.C. § 287 either because the Asserted Patents are not practiced by ABC or any licensee and/or because any licensee has been required to mark its product.

17.     Upon information and belief, Defendants have committed acts of direct, contributory, and induced patent infringement, which will be described in more detail below. These acts are in violation of 35 U.S.C. § 271 and should be considered willful.

THE INVENTIONS

18.     A typical AR15-pattern firearm, for example, is considered a semiautomatic firearm. The operation of a *standard disconnector* AR-pattern trigger mechanism is commenced by the trigger member being pulled by the user. The trigger member releases the hammer from the trigger sear and allows the hammer to strike the firing pin. A portion of the propellant gas is used

to begin the process of sending the bolt carrier to the rear of the firearm. The rearward movement of bolt carrier cocks the hammer on the disconnector and then the bolt is allowed to return forward into battery with a new round inserted into the chamber. While this is happening, in the standard AR-pattern semiautomatic trigger, the user can either continue to hold the trigger member in a pulled (i.e., fired) state or allow the trigger to return to its reset state, in which the sear, rather than the disconnector, engages and holds the hammer in a cocked position. When the user reduces pressure on the trigger member to allow the trigger spring to reset the trigger member, the disconnector releases the hammer to engage the trigger sear.

19.     In the standard AR-pattern trigger assembly, the purpose of the disconnector is to hold the hammer in a cocked position until the trigger member is reset by a trigger spring when the user lets the trigger reset. The disconnector allows the firearm to be fired only a single time when the trigger is pulled and held, because the user is not typically able to manually reset the trigger rapidly enough so that the sear engages before the bolt carrier or bolt returns to its in-battery position. The disconnector prevents the firearm from either firing multiple rounds on a single pull of the trigger, or from allowing the hammer to simply "follow" the bolt carrier as it returns to battery without firing a second round, leaving the hammer uncocked.

20.     In contrast, in what Plaintiffs have coined a "forced reset" trigger mechanism, cycling of the bolt carrier or bolt causes the trigger member to be mechanically moved to the reset position and hold the trigger member there until the bolt or bolt carrier is back in battery, when it is safe for the user to pull the trigger again, without the need for a disconnector.

21.     The '247 and '159 Patents provide a novel device for accelerating the firing sequence of any semiautomatic firearm, in contrast to a standard semiautomatic trigger or other prior art devices that allow an accelerated rate of semiautomatic firing. The device can be selected

4

to operate in either a standard semiautomatic mode or a "forced reset" semiautomatic mode and uses a cam, rotated by cycling of the action, to cause the trigger member to reset and prevent the trigger member from being pulled again until the action has returned to the in-battery position.

22.     The '784 Patent provides a device that works in a trigger system as an extended trigger member locking mechanism for use with a semi-automatic firearm that employs, in some embodiments, a "deflectable extension of the locking member that is actuated by forward movement of the bolt carrier," among other innovations as explicitly claimed. Certain inventions of the '784 Patent overcome the geometric limitations of prior art designs for use in multiple and varied semi-automatic firearm designs by allowing a locking member to deflect or fold separately from the body portion of the locking member when contacted by the forward portion of the bolt carrier as it cycles to the rear.

23.     The '403 Patent describes and claims a similarly operating device with the additional feature that it can be selected to operate in either of two distinct modes: 1) standard disconnector semiautomatic mode and 2) "forced reset" semiautomatic mode.

24.     The claims of the patents define the scope of the patented inventions.

## THE INFRINGING DEVICE

25.     On information and belief, Defendants have been and/or are currently making, using, selling, and/or offering for sale products that embody the technology claimed in the Asserted Patents, including a (3-Position) "Atrius Forced Reset Selector" ("the Atrius Selector") installed in a complete firearm, which embodies the technology claimed in at least the '247, '784, '159, and '403 Patents.

26.     On information and belief, Defendants previously or are currently making, using, selling, and/or offering for sale the Atrius Selector via the website https://theonehorse.com/product/expressrifle/, in multiple variants, including at least one of:

    a.   <u>As a standalone product</u>; and/or

    b.   <u>In conjunction with separate trigger mechanism parts</u>; and/or

    c.   <u>Pre-installed in a receiver and/or complete firearm</u>.

27.    Exemplary photographs are shown below:









28. The Atrius Selector can operate in a "disconnector mode," which is much like that of a standard AR-15 trigger. The user can switch between safe, standard semiautomatic with disconnector, and "forced reset" semiautomatic with cam modes by rotating the safety selector between positions.

### COUNT I — INFRINGEMENT OF THE '247 PATENT

29. Plaintiffs re-allege and incorporate the allegations of the preceding paragraphs as if fully set forth herein.

30. In violation of 35 U.S.C. § 271, Defendants have infringed, induced others to infringe, and/or contributed to the infringement of one or more claims of the '247 Patent, including

but not limited to claim 15, literally and/or under the doctrine of equivalents, by among other things, making, using, offering for sale, selling, and/or importing into the United States unlicensed products in a manner that infringes the '247 Patent. Such unlicensed products include the Atrius Selector.

31.    On information and belief, Defendants have and continue to willfully infringe, induce others to infringe, and/or contribute to the infringement of one or more claims of the '247 Patent, including but not limited to claim 15, literally and/or under the doctrine of equivalents.

32.    An exemplary comparison of the Atrius Selector, when assembled and used as intended, with claim 15 of the '247 Patent, is illustrated in the chart below:

| '247 Patent Claim 15 | The Atrius Selector |
|---|---|
| 15. A firearm trigger mechanism comprising: | When installed and used in the complete firearm sold by Defendants, the Atrius Selector is part of a trigger mechanism and functions as a cam that in at least one mode, both causes the reset of the trigger and locks the trigger during the cycle of operation. https://theonehorse.com/product/expressrifle/ |

| '247 Patent Claim 15 | The Atrius Selector |
|---|---|
| | **Atrius Selector** |
| a hammer having a sear catch and a hook for engaging a disconnector and adapted to be mounted in a fire control mechanism pocket of a receiver | The Atrius Selector (yellow) is installed in a fire control mechanism pocket of a receiver along with a hammer (red) that has a sear catch and a hook for engaging a disconnector (orange). (Plaintiff-generated renderings of Atrius Selector here and below) |
| to pivot on a transverse hammer pivot axis between set and released positions, said hammer adapted to be pivoted rearward by rearward movement of a bolt carrier, | The hammer (red) pivots on a transverse hammer pivot axis between set and released positions, depicted below. The hammer is adapted to be pivoted rearward by rearward movement of a bolt carrier. |

| '247 Patent Claim 15 | The Atrius Selector |
|---|---|
| |

**Hammer Set Position**

**Hammer Released Position** |
| a trigger member having a sear and adapted to be mounted in the fire control mechanism pocket to pivot on a transverse trigger member pivot axis between set and released positions, | The Atrius Selector (yellow) is installed with a trigger member (brown) in the fire control mechanism pocket that pivots on a transverse trigger member pivot axis between set and released positions and has a sear. The trigger member (brown) has a sear. |

| '247 Patent Claim 15 | The Atrius Selector |
|---|---|
| |  |
| wherein said sear and sear catch are in engagement in said set positions of said hammer and trigger member | The sear of the trigger member (brown) and sear catch of the hammer (red) are in engagement when the hammer and trigger member are in their set positions.<br><br>(**Trigger Member Set Position Above**) |
| and are out of engagement in said released positions of said hammer and trigger member, | The sear of the trigger member (brown) and sear catch of the hammer (red) are out of engagement in the released position. |

| '247 Patent Claim 15 | The Atrius Selector |
|---|---|
| | **Trigger Member Released Position** |
| said disconnector having a hook for engaging said hammer and adapted to be mounted in the fire control mechanism pocket to pivot on a transverse disconnector pivot axis, | The disconnector (orange) is adapted to be mounted in the fire control mechanism pocket to pivot on a transverse disconnector pivot axis. The disconnector has a hook for engaging the hammer (red).<br><br>**Disconnector Hook Engaged** |
| and a cam having a cam lobe and adapted to be movably mounted in the | The Atrius Selector has a cam and lever that is adapted to be movably mounted in the fire control mechanism pocket. (*See* image above depicting Atrius Selector, shown in yellow, in fire control mechanism pocket) |

| '247 Patent Claim 15 | The Atrius Selector |
|---|---|
| fire control mechanism pocket, | **Atrius Selector Cam with Lobe and Lever** |
| said cam being movable between a first position and a second position, in said second position said cam lobe forces said trigger member towards said set position, | The cam is movable between a first position and a second position. **Cam and Lobe First Position** In the second position, the cam lobe mechanically moves the trigger member (brown) toward the set position when the cam is in the "forced reset" semi-automatic mode. |

| '247 Patent Claim 15 | The Atrius Selector |
|---|---|
| |  **Cam and Lobe Second Position** |
| whereupon in a standard semi-automatic mode, said cam is in said first position, | During at least part of the cycle in the standard semi-automatic mode, the cam is in the first position. |
| rearward movement of the bolt carrier causes rearward pivoting of said hammer such that said disconnector hook catches said hammer hook, | Rearward movement of the bolt carrier causes rearward pivoting of the hammer (red) such that the disconnector (orange) hook catches the hammer hook. |

| '247 Patent Claim 15 | The Atrius Selector |
|---|---|
| |  |
| and thereafter the bolt carrier moves forward into battery, | Thereafter, the bolt carrier moves forward into battery, |
| at which time a user must manually release said trigger member to free said hammer from said disconnector to permit said hammer and trigger member to pivot to said set positions so that the user can pull said trigger | at which time a user must manually release the trigger member (brown) to free said hammer (red) from the disconnector (orange) to permit the hammer and trigger member to pivot to the set positions so that the user can pull the trigger member to fire the firearm |

| '247 Patent Claim 15 | The Atrius Selector |
|---|---|
| member to fire the firearm, and |  |
| whereupon in a forced reset semi-automatic mode, | When in the "forced reset" semi-automatic mode, |
| said cam is in said second position, rearward movement of the bolt carrier causes rearward pivoting of said hammer such that said disconnector hook is prevented from catching said hammer hook, | The cam is in the second position during at least part of the cycle and mechanically moves the trigger member toward the set position. Rearward movement of the bolt carrier causes rearward pivoting of the hammer (red) such that the disconnector (orange) hook is prevented from catching the hammer hook. |

| '247 Patent Claim 15 | The Atrius Selector |
|---|---|
| |  |
| and thereafter the bolt carrier moves forward into battery, | Thereafter, the bolt carrier moves forward into battery, |
| at which time the user can pull said trigger member to fire the firearm. | . . . at which time the user can pull said trigger member (brown) to fire the firearm. |

| '247 Patent Claim 15 | The Atrius Selector |
| --- | --- |
|  |  |

33.    On information and belief, in addition to direct infringement, Defendants take active steps to induce others, including their customers, to directly infringe the '247 patent. Defendants take such active steps knowing that those steps will induce, encourage, and facilitate direct infringement by others. Such active steps include, but are not limited to, installation of, encouraging, advertising, promoting, and instructing others to use and/or how to use the Atrius Selector. One example of this is the promotional material found on Defendants' website (https://vimeo.com/1202500403?fl=pl&fe=sh; https://theonehorse.com/one-horse-to-launch-one-horse-express-rifle-in-collaboration-with-atrius-development-group/):



## ONE HORSE TO LAUNCH ONE HORSE EXPRESS RIFLE IN COLLABORATION WITH ATRIUS DEVELOPMENT GROUP

&#9760; Croco Rasel    &#128197; June 19, 2026    &#128336; 12:28 am

**One Horse to Launch One Horse Express Rifle in Collaboration With Atrius Development Group**

**BROWNSTOWN, Ind., June 19, 2026** — One Horse, a rapidly growing American firearms

Manufacturer; Today, announced the launch of its exclusive One Horse Express Rifle—the first

factory-built production rifle equipped with Atrius Development Group's revolutionary Forced

Reset Selector (FRS).

Rather than simply adding components to an existing platform, the One Horse Express is

designed, assembled and tuned from the ground up as a complete system to deliver maximum

reliability, consistency and performance right out of the box.

The One Horse Express key features:

- Atrius Development Group FRS (Single-Sided)
- THRiL RTG (Rugged Tactical Grip)
- THRiL CCS (Combat Competition Stock)
- Breek Arms Warhammer Mod2
- 16-inch CrMoV, nitride, SOCOM-profile barrel with 1:8 twist, dimpled
- 15-inch Express-Lock Handguard System with enhanced lock-up
- Low-profile, staked, steel gas block, mid-length gas system
- H2 buffer system

The One Horse Express will be available beginning June 19, 2026.

"This rifle was built to run," said Jeremy Hammons, CEO of One Horse. "The One Horse Express represents a significant step forward for One Horse and for production rifle manufacturing. This collaboration pairs Atrius' selector technology with a rifle platform engineered, assembled and tuned as a complete system from day one. Atrius and One Horse share the same standard: disciplined manufacturing, dependable performance and a finished product the end user can trust and be proud to own."

"Since day one, the Atrius Forced Reset Selector has set the standard for what is possible in this industry," said Ryan Spadafore, CEO and founder of Atrius Development Group. "Partnering with One Horse is the kind of move that changes the conversation. They represent what we respect in American manufacturing: family ownership, precision-driven production and a commitment to performance. This launch is more than a new rifle. It is an example of the industry working together to move gun culture in a positive direction. We're proud to stand alongside One Horse as we take that next step together. Together we win."

34.    On information and belief, Defendants know or should know that such activities d9irectly infringe and induce others to directly infringe at least claim 15 of the '247 Patent.

35.    On information and belief, Defendants also contribute to the infringement of the '247 Patent by others, including their customers. Acts by Defendants that contribute to the infringement of others include, but are not limited to, the sale, offer for sale, and/or importation by Defendants of the components of the Atrius Selector, such as the cam or cam lever arm. The components are not suitable for substantial noninfringing use as they are specially designed and adapted to be used in a fire control unit to mechanically reset a trigger mechanism and infringe the '247 Patent.

36.    Defendants have engaged in egregious infringement behavior with knowledge of the '247 Patent, which has been duly issued by the USPTO, and is presumed valid. On information and belief, Defendants have known or should have known that their actions constituted and continue to constitute infringement of the '247 Patent and that the '247 Patent is valid at least through the service of this complaint. Defendants could not reasonably or subjectively believe that their actions do not constitute infringement of the '247 Patent, nor could they reasonably or subjectively believe that the patent is invalid. Despite that knowledge and subjective belief, and the objectively high likelihood that their actions constitute infringement, Defendants have continued their infringing activities. As such, Defendants willfully infringe the '247 Patent.

37.    By their actions, Defendants have injured Plaintiffs and are liable to Plaintiffs for infringement of the '247 Patent pursuant to 35 U.S.C. § 271.

38.    By their actions, Defendants' infringement of the '247 Patent has irreparably injured Plaintiffs. Unless such infringing acts are enjoined by this Court, Plaintiffs will continue to suffer additional irreparable injury.

39. By their actions, Defendants' infringement of the '247 Patent has damaged and continues to damage, Plaintiffs in an amount yet to be determined.

40. Defendants' infringement of the '247 patent is exceptional and entitles Plaintiffs to attorneys' fees and costs incurred in prosecuting this action under 35 U.S.C. § 285.

41. Defendants' acts of infringement are willful and for no other purpose than to deliberately and irreparably harm Plaintiffs' business, sales, reputation, and good-will.

42. Plaintiffs have been substantially harmed by Defendants' infringing activities and are entitled to relief including but not limited to a preliminary injunction, a permanent injunction, damages adequate to compensate for the infringement, being lost profits or no less than a reasonable royalty, treble damages, and attorneys' fees.

### COUNT II — INFRINGEMENT OF THE '784 PATENT

43. Plaintiffs re-allege and incorporate the allegations of the preceding paragraphs as if fully set forth herein.

44. In violation of 35 U.S.C. § 271, Defendants have infringed, induced others to infringe, and/or contributed to the infringement of one or more claims of the '784 patent, including but not limited to claim 1, literally and/or under the doctrine of equivalents, by among other things, making, using, offering for sale, selling, and/or importing into the United States unlicensed products in a manner that infringes the '784 patent. Such unlicensed products include the Atrius Selector.

45. On information and belief, Defendants have and continue to willfully infringe, induce others to infringe, and/or contribute to the infringement of one or more claims of the '784 patent, including but not limited to claim 1, literally and/or under the doctrine of equivalents.

46. An exemplary comparison of the Atrius Selector, when assembled and used as intended, with claim 1 of the '784 Patent is illustrated in the chart below:

| '784 Patent Claim 1 | The Atrius Selector |
|---|---|
| 1. In a forced reset trigger mechanism, an extended trigger member locking device, comprising: | When installed in the complete firearm sold by Defendants and used as directed, the Atrius Selector is part of a trigger mechanism and functions as an extended trigger member locking device.<br><br><br><br>https://theonehorse.com/product/expressrifle/<br><br><br><br>**Atrius Selector** |

24

| '784 Patent Claim 1 | The Atrius Selector |
|---|---|
| |  **Atrius Selector Installed** (Plaintiff-generated renderings of Atrius Selector here and below; Locking member and bolt carrier shown here and below in section view for clarity) |
| a locking member that is movable between a first position in which it locks a trigger against pulling movement | The Atrius Selector operates as a locking member and has a first position in which it locks the trigger member against pulling movement. **Locked First Position** |

| '784 Patent Claim 1 | The Atrius Selector |
|---|---|
| and a second position where it does not restrict movement of the trigger member, | The Atrius Selector is moveable from the first position to a second position where it does not restrict movement of the trigger member.<br><br><br><br>**Unlocked Second Position** |
| the locking member configured to be movably supported by a frame | The Atrius Selector is movably (pivotally about the axis depicted below) supported by a frame (the lower receiver). |

26

| '784 Patent Claim 1 | The Atrius Selector |
|---|---|
| and including a generally upward extension portion configured to make actuating contact with a surface of the bolt carrier, | The Atrius Selector has an upward extending portion (yellow lever arm) configured to make actuating contact with a surface of the bolt carrier.<br><br><br><br>The body portion (purple) has a track with holes that are lined up to correspond to the selectable modes (Fire/ Standard Semi-Automatic, "Forced Reset" Semi-Automatic) which are positively stopped by a detent (blue) |

| '784 Patent Claim 1 | The Atrius Selector |
|---|---|
|  | **Section View of Body Portion (purple), Lower Receiver (grey), and Detent (blue)**<br><br>Once installed, the body portion (purple) is movably supported by the lower receiver (grey) using the detent (blue). |
| such actuating contact causing the locking member to move from the first position to the second position, | The actuation causes the locking member to move from the first position to the second position.<br><br>**Unlocked Second Position** |
| the locking member having a body portion that is movably supported | The Atrius Selector has a body portion (purple) that is movably supported by the lower receiver. |

| '784 Patent Claim 1 | The Atrius Selector |
|---|---|
| |  |
| and an upwardly extending deflectable portion that is separately movable relative to the body portion between an extended position | The Atrius Selector has an upwardly extending deflectable portion (lever arm). The connection is designed to allow separate movement of the lever arm relative to the body portion between one position (depicted in red) where it is extended and another position where it is deflected (depicted in yellow). Below illustrates the upward extending deflectable portion's (lever arm) total separate travel with an overlay of the lever in both positions without the body portion moving. |

| '784 Patent Claim 1 | The Atrius Selector |
|---|---|
| |  |
| and a deflected position. | The lever is now shown deflected independent of the body. |

47.    On information and belief, in addition to direct infringement, Defendants take active steps to induce others, including their customers, to directly infringe the '784 patent. Defendants take such active steps knowing that those steps will induce, encourage, and facilitate direct infringement by others. Such active steps include, but are not limited to, installation of, encouraging, advertising, promoting, and instructing others to use and/or how to use the Atrius Selector while selling products. One example of this is the promotional material found on

Defendants' website (https://vimeo.com/1202500403?fl=pl&fe=sh; https://theonehorse.com/one-horse-to-launch-one-horse-express-rifle-in-collaboration-with-atrius-development-group/):

## ONE HORSE TO LAUNCH ONE HORSE EXPRESS RIFLE IN COLLABORATION WITH ATRIUS DEVELOPMENT GROUP

⊕ Croco Rasel    📅 June 19, 2026    🕐 12:28 am

**One Horse to Launch One Horse Express Rifle in Collaboration With Atrius Development Group**

**BROWNSTOWN, Ind., June 19, 2026** — One Horse, a rapidly growing American firearms Manufacturer; Today, announced the launch of its exclusive One Horse Express Rifle—the first factory-built production rifle equipped with Atrius Development Group's revolutionary Forced Reset Selector (FRS).

Rather than simply adding components to an existing platform, the One Horse Express is designed, assembled and tuned from the ground up as a complete system to deliver maximum reliability, consistency and performance right out of the box.

The One Horse Express key features:

- Atrius Development Group FRS (Single-Sided)
- THRiL RTG (Rugged Tactical Grip)
- THRiL CCS (Combat Competition Stock)
- Breek Arms Warhammer Mod2
- 16-inch CrMoV, nitride, SOCOM-profile barrel with 1:8 twist, dimpled
- 15-inch Express-Lock Handguard System with enhanced lock-up
- Low-profile, staked, steel gas block, mid-length gas system
- H2 buffer system

The One Horse Express will be available beginning June 19, 2026.

"This rifle was built to run," said Jeremy Hammons, CEO of One Horse. "The One Horse Express represents a significant step forward for One Horse and for production rifle manufacturing. This collaboration pairs Atrius' selector technology with a rifle platform engineered, assembled and tuned as a complete system from day one. Atrius and One Horse share the same standard: disciplined manufacturing, dependable performance and a finished product the end user can trust and be proud to own."

"Since day one, the Atrius Forced Reset Selector has set the standard for what is possible in this industry," said Ryan Spadafore, CEO and founder of Atrius Development Group. "Partnering with One Horse is the kind of move that changes the conversation. They represent what we respect in American manufacturing: family ownership, precision-driven production and a commitment to performance. This launch is more than a new rifle. It is an example of the industry working together to move gun culture in a positive direction. We're proud to stand alongside One Horse as we take that next step together. Together we win."

31



48.    On information and belief, Defendants know or should know that such activities induce others to directly infringe at least claim 1 of the '784 Patent.

49.    On information and belief, Defendants also contribute to the infringement of the '784 Patent by others, including their customers. Acts by Defendants that contribute to the infringement of others include, but are not limited to, the sale, offer for sale, and/or importation by Defendants of the components of the Atrius Selector, such as the cam or cam lever arm. The components are not suitable for substantial noninfringing use as they are specially designed and adapted to be used in a fire control unit to mechanically reset a trigger mechanism and infringe the '784 Patent.

50.    Defendants have engaged in egregious infringement behavior with knowledge of the '784 Patent, which has been duly issued by the USPTO, and is presumed valid. On information and belief, Defendants have known or should have known that their actions constituted and continue to constitute infringement of the '784 Patent and that the '784 Patent is valid at least through the service of this complaint. Defendants could not reasonably or subjectively believe that their actions do not constitute infringement of the '784 Patent, nor could they reasonably or subjectively believe that the patent is invalid. Despite that knowledge and subjective belief, and

the objectively high likelihood that their actions constitute infringement, Defendants have continued their infringing activities. As such, Defendants willfully infringe the '784 Patent.

51.    By their actions, Defendants have injured Plaintiffs and are liable to Plaintiffs for infringement of the '784 Patent pursuant to 35 U.S.C. § 271.

52.    By their actions, Defendants' infringement of the '784 Patent has irreparably injured Plaintiffs. Unless such infringing acts are enjoined by this Court, Plaintiffs will continue to suffer additional irreparable injury.

53.    By their actions, Defendants' infringement of the '784 Patent has damaged and continues to damage, Plaintiffs in an amount yet to be determined.

54.    Defendants' infringement of the '784 patent is exceptional and entitles Plaintiffs to attorneys' fees and costs incurred in prosecuting this action under 35 U.S.C. § 285.

55.    Defendants' acts of infringement are willful and for no other purpose than to deliberately and irreparably harm Plaintiffs' business, sales, reputation, and good-will.

56.    Plaintiffs have been substantially harmed by Defendants' infringing activities and are entitled to relief including but not limited to a preliminary injunction, a permanent injunction, damages adequate to compensate for the infringement, being lost profits or no less than a reasonable royalty, treble damages, and attorneys' fees.

## COUNT III — INFRINGEMENT OF THE '159 PATENT

57.    Plaintiffs re-allege and incorporate the allegations of the preceding paragraphs as if fully set forth herein.

58.    In violation of 35 U.S.C. § 271, Defendants have infringed, induced others to infringe, and/or contributed to the infringement of one or more claims of the '159 patent, including but not limited to claim 1, literally and/or under the doctrine of equivalents, by among other things, making, using, offering for sale, selling, and/or importing into the United States unlicensed

products in a manner that infringes the '159 patent. Such unlicensed products include the Atrius Selector.

59.    On information and belief, Defendants have and continue to willfully infringe, induce others to infringe, and/or contribute to the infringement of one or more claims of the '159 patent, including but not limited to claim 1, literally and/or under the doctrine of equivalents.

60.    An exemplary comparison of the Atrius Selector, when assembled and used as intended, with claim 1 of the '159 Patent is illustrated in the chart below:

| '159 Patent Claim 1 | The Atrius Selector |
|---|---|
| 1. A firearm trigger mechanism for a firearm having a fire control mechanism pocket and a reciprocating bolt means, the trigger mechanism operable in a first, standard semi-automatic mode and in a second, forced reset semi-automatic mode, the mechanism comprising: | When installed in a complete firearm as sold by Defendants and used as directed, the Atrius Selector is part of a firearm trigger mechanism that uses a bolt means. With the Atrius Selector installed, the trigger mechanism operates in a standard semi-automatic mode and a "forced reset" semi-automatic mode  https://theonehorse.com/product/expressrifle/ |

| '159 Patent Claim 1 | The Atrius Selector |
|---|---|
| | **Atrius Selector** **Atrius Selector** (**Installed**) (Plaintiff-generated renderings of the Atrius Selector here and below) |
| a hammer having a sear surface and a hook for engaging a disconnector and adapted to be mounted in a fire control | The Atrius Selector (yellow) is installed in a fire control mechanism pocket of a receiver along with a hammer (red) that has a sear surface and a hook for engaging a disconnector (orange). |

| '159 Patent Claim 1 | The Atrius Selector |
|---|---|
| mechanism pocket of a receiver |  **Atrius Selector (Installed)** |
| to pivot on a transverse hammer pivot axis between set and released positions, the hammer adapted to be pivoted rearward by rearward movement of a bolt means, | The hammer (red) pivots on a transverse hammer pivot axis between set and released positions, depicted below. The hammer is adapted to be pivoted rearward by rearward movement of a bolt means.<br><br>**Hammer Set Position** |

| '159 Patent Claim 1 | The Atrius Selector |
|---|---|
| | **Hammer Released Position** |
| a trigger member having a trigger sear surface and adapted to be mounted in the fire control mechanism pocket to pivot on a transverse trigger member pivot axis<br><br>between set and | The Atrius Selector (yellow) is installed with a trigger member (brown) in the fire control mechanism pocket and the trigger member pivots on a transverse trigger member pivot axis between set and released positions. The trigger member has a sear surface.<br><br>**Trigger Member Set Position** |

| '159 Patent Claim 1 | The Atrius Selector |
|---|---|
| released positions, | **Trigger Member Released Position** |
| wherein the trigger member sear surface and hammer sear surface are in engagement in the set positions of the hammer and trigger member | The sear surface of the trigger member (brown) and sear surface of the hammer (red) are in engagement when the hammer and trigger member are in their set positions.<br><br>**Trigger Member and Hammer Member Set Position** |
| and are out of engagement in the released positions of the hammer and trigger member, | The sear surface of the trigger member (brown) and sear catch surface of the hammer (red) are out of engagement in the released position. |

| '159 Patent Claim 1 | The Atrius Selector |
|---|---|
| |  **Trigger Member and Hammer Member Released Positions** |
| the disconnector having a hook for engaging the hammer and adapted to be mounted in the fire control mechanism pocket to pivot on a transverse disconnector pivot axis, and | The disconnector (orange) is adapted to be mounted in the fire control mechanism pocket to pivot on a transverse disconnector pivot axis. The disconnector has a hook for engaging the hammer (red). **Disconnector Hook Engaged** |
| a cam having a cam lobe and adapted to be | The Atrius Selector has a cam with a cam lobe and lever that is adapted to be movably mounted in the fire control mechanism |

| '159 Patent Claim 1 | The Atrius Selector |
|---|---|
| movably mounted in the fire control mechanism pocket, | pocket. (*See* image above depicting Atrius Selector, shown in yellow, in fire control mechanism pocket)<br><br><br><br>**Atrius Selector Cam with Lobe and Lever** |
| the cam being movable between a first position and a second position, in the second position the cam lobe forces the trigger member toward the set position, | The cam is movable between a first position and a second position.<br><br>**Cam and Lobe First Position**<br><br>In the second position, the cam lobe mechanically moves the trigger member (brown) toward the set position when the cam is in the "forced reset" semi-automatic mode. |

| '159 Patent Claim 1 | The Atrius Selector |
|---|---|
| |  **Cam and Lobe Second Position** |
| whereupon in the first mode, | While in the first (standard semi-automatic) mode, **Cam in the First (Semi-Automatic) Mode** |
| rearward movement of the bolt means causes rearward pivoting of the hammer such that the disconnector hook catches the hammer hook, | Rearward movement of the bolt means causes rearward pivoting of the hammer (red) such that the disconnector (orange) hook catches the hammer hook. |

| '159 Patent Claim 1 | The Atrius Selector |
|---|---|
| | **Disconnector Hook Catches the Hammer** |
| and thereafter the bolt means moves forward into battery, | Thereafter, the bolt means moves forward into battery, |

| '159 Patent Claim 1 | The Atrius Selector |
|---|---|
| | **Pressure on Trigger Member Prevents Reset** |
| at which time a user must manually reduce pressure on the trigger member to free the hammer from the disconnector to permit the hammer and trigger member to pivot to the set positions so that the user can pull the trigger member to fire the firearm, and | . . . at which time a user must manually reduce pressure on the trigger member (brown) to free the hammer (red) from the disconnector (orange) to permit the hammer and trigger member to pivot to the set positions so that the user can pull the trigger member to fire the firearm.<br><br>**Reduced Pressure on Trigger Member Allows Reset**) |
| whereupon in a second mode, | When in the second ("forced reset" semi-automatic) mode, |

| '159 Patent Claim 1 | The Atrius Selector |
|---|---|
|  | **Cam in the Second** ("**Forced Reset" Semi-Automatic**) **Mode** |
| rearward movement of the bolt means causes rearward pivoting of the hammer such that the disconnector hook is prevented from holding the hammer, | Rearward movement of the bolt means causes rearward pivoting of the hammer (red) and the cam to move the trigger member toward the reset position such that the disconnector (orange) hook is prevented from holding the hammer hook. |
| and thereafter the bolt means moves forward into battery, | Thereafter, the bolt means moves forward into battery and the hammer moves to its reset position, |

| '159 Patent Claim 1 | The Atrius Selector |
|---|---|
| |  |
| at which time the user can pull the trigger member to fire the firearm. | . . . at which time the user can pull the trigger member (brown) to fire the firearm without having to first release pressure on the trigger member. |

61.    On information and belief, in addition to direct infringement, Defendants take active steps to induce others, including their customers, to directly infringe the '159 patent. Defendants take such active steps knowing that those steps will induce, encourage, and facilitate

direct infringement by others. Such active steps include, but are not limited to, installation of, encouraging, advertising, promoting, and instructing others to use and/or how to use the Atrius Selector while selling products. One example of this is the promotional material found on Defendants' website (https://vimeo.com/1202500403?fl=pl&fe=sh; https://theonehorse.com/one-horse-to-launch-one-horse-express-rifle-in-collaboration-with-atrius-development-group/):

## ONE HORSE TO LAUNCH ONE HORSE EXPRESS RIFLE IN COLLABORATION WITH ATRIUS DEVELOPMENT GROUP

Croco Rasel    June 19, 2026    12:28 am

**One Horse to Launch One Horse Express Rifle in Collaboration With Atrius Development Group**

**BROWNSTOWN, Ind., June 19, 2026** — One Horse, a rapidly growing American firearms Manufacturer; Today, announced the launch of its exclusive One Horse Express Rifle—the first factory-built production rifle equipped with Atrius Development Group's revolutionary Forced Reset Selector (FRS).

Rather than simply adding components to an existing platform, the One Horse Express is designed, assembled and tuned from the ground up as a complete system to deliver maximum reliability, consistency and performance right out of the box.

The One Horse Express key features:

- Atrius Development Group FRS (Single-Sided)
- THRiL RTG (Rugged Tactical Grip)
- THRiL CCS (Combat Competition Stock)
- Breek Arms Warhammer Mod2
- 16-inch CrMoV, nitride, SOCOM-profile barrel with 1:8 twist, dimpled
- 15-inch Express-Lock Handguard System with enhanced lock-up
- Low-profile, staked, steel gas block, mid-length gas system
- H2 buffer system

The One Horse Express will be available beginning June 19, 2026.

"This rifle was built to run," said Jeremy Hammons, CEO of One Horse. "The One Horse Express represents a significant step forward for One Horse and for production rifle manufacturing. This collaboration pairs Atrius' selector technology with a rifle platform engineered, assembled and tuned as a complete system from day one. Atrius and One Horse share the same standard: disciplined manufacturing, dependable performance and a finished product the end user can trust and be proud to own."

"Since day one, the Atrius Forced Reset Selector has set the standard for what is possible in this industry," said Ryan Spadafore, CEO and founder of Atrius Development Group. "Partnering with One Horse is the kind of move that changes the conversation. They represent what we respect in American manufacturing: family ownership, precision-driven production and a commitment to performance. This launch is more than a new rifle. It is an example of the industry working together to move gun culture in a positive direction. We're proud to stand alongside One Horse as we take that next step together. Together we win."



62.    On information and belief, Defendants know or should know that such activities induce others to directly infringe at least claim 1 of the '159 Patent.

63.    On information and belief, Defendants also contribute to the infringement of the '159 Patent by others, including their customers. Acts by Defendants that contribute to the infringement of others include, but are not limited to, the sale, offer for sale, and/or importation by Defendants of the components of the Atrius Selector, such as the cam or cam lever arm. The components are not suitable for substantial noninfringing use as they are specially designed and adapted to be used in a fire control unit to mechanically reset a trigger mechanism and infringe the '159 Patent.

64.    Defendants have engaged in egregious infringement behavior with knowledge of the '159 Patent, which has been duly issued by the USPTO, and is presumed valid. On information and belief, Defendants have known or should have known that their actions constituted and continue to constitute infringement of the '159 Patent and that the '159 Patent is valid at least through the service of this complaint. Defendants could not reasonably or subjectively believe that their actions do not constitute infringement of the '159 Patent, nor could they reasonably or subjectively believe that the patent is invalid. Despite that knowledge and subjective belief, and

the objectively high likelihood that their actions constitute infringement, Defendants have continued their infringing activities. As such, Defendants willfully infringe the '159 Patent.

65.    By their actions, Defendants have injured Plaintiffs and are liable to Plaintiffs for infringement of the '159 Patent pursuant to 35 U.S.C. § 271.

66.    By their actions, Defendants' infringement of the '159 Patent has irreparably injured Plaintiffs. Unless such infringing acts are enjoined by this Court, Plaintiffs will continue to suffer additional irreparable injury.

67.    By their actions, Defendants' infringement of the '159 Patent has damaged and continues to damage, Plaintiffs in an amount yet to be determined.

68.    Defendants' infringement of the '159 patent is exceptional and entitles Plaintiffs to attorneys' fees and costs incurred in prosecuting this action under 35 U.S.C. § 285.

69.    Defendants' acts of infringement are willful and for no other purpose than to deliberately and irreparably harm Plaintiffs' business, sales, reputation, and good-will.

70.    Plaintiffs have been substantially harmed by Defendants' infringing activities and are entitled to relief including but not limited to a preliminary injunction, a permanent injunction, damages adequate to compensate for the infringement, being lost profits or no less than a reasonable royalty, treble damages, and attorneys' fees.

## COUNT IV — INFRINGEMENT OF THE '403 PATENT

71.    Plaintiffs re-allege and incorporate the allegations of the preceding paragraphs as if fully set forth herein.

72.    In violation of 35 U.S.C. § 271, Defendants have infringed, induced others to infringe, and/or contributed to the infringement of one or more claims of the '403 patent, including but not limited to claim 38, literally and/or under the doctrine of equivalents, by among other things, making, using, offering for sale, selling, and/or importing into the United States unlicensed

products in a manner that infringes the '403 patent. Such unlicensed products include the Infringing Device.

73.    On information and belief, Defendants have and continue to willfully infringe, induce others to infringe, and/or contribute to the infringement of one or more claims of the '403 patent, including but not limited to claim 38, literally and/or under the doctrine of equivalents.

74.    An exemplary comparison of the Atrius Selector, when assembled and used as intended, with claim 38 of the '403 Patent is illustrated in the chart below:

| '403 Patent Claim 38 | The Atrius Selector |
|---|---|
| 38. A forced reset trigger mechanism, comprising: | When installed in a complete firearm as sold by Defendants and used as directed, the Atrius Selector is part of a trigger mechanism.<br><br><br><br>https://theonehorse.com/product/expressrifle/<br><br><br><br>**Atrius Selector** |

| '403 Patent Claim 38 | The Atrius Selector |
|---|---|
| a hammer having a hammer hook and adapted to pivot on a transverse hammer pivot axis; | The Atrius Selector (yellow) is installed in a fire control mechanism pocket along with a hammer (red) that has a hammer hook and pivots on a transverse axis.<br><br><br><br>**Atrius Selector (Installed)**<br><br>(Plaintiff-generated renderings of Atrius Selector here and below) |
| a disconnector having a disconnector hook and adapted to pivot on a transverse disconnector pivot axis;<br><br>a trigger member; and | The Atrius Selector is installed along with a disconnector (orange) which has a disconnector hook and pivots on a transverse disconnector pivot axis, and a trigger member (brown).<br><br><br><br>**Disconnector and Trigger Member** |
| a safety selector adapted to be movable between a standard semi-automatic position | The Atrius Selector is a safety selector adapted to be movable between a standard semi-automatic position, |

| '403 Patent Claim 38 | The Atrius Selector |
|---|---|
| and a forced reset semi-automatic position, | **Atrius Selector (installed) in Standard Semi-Automatic Position**<br><br>. . . and a "forced reset" semi-automatic position,<br><br>**Atrius Selector (installed) in "Forced Reset" Semi-Automatic Position** |
| wherein when the safety selector is in the standard semi-automatic position and the trigger member is rearwardly actuated, | When safety selector is in the standard semi-automatic position the trigger member (brown) is rearwardly actuated. |

| '403 Patent Claim 38 | The Atrius Selector |
|---|---|
| and after the hammer pivots rearward to a position where the hammer hook is past the disconnector hook, | The hammer (red) pivots rearward to a position where the hammer hook is past the disconnector hook (orange), |
| rearward pressure on the trigger member must be reduced to permit the trigger member to then be actuated to fire a firearm. | Rearward pressure on the trigger member (brown) must be reduced to permit the trigger member to then be actuated to fire a firearm. |



| '403 Patent Claim 38 | The Atrius Selector |
|---|---|
| |  |

75. On information and belief, in addition to direct infringement, Defendants take active steps to induce others, including their customers, to directly infringe the '403 patent. Defendants take such active steps knowing that those steps will induce, encourage, and facilitate direct infringement by others. Such active steps include, but are not limited to, encouraging, advertising, promoting, and instructing others to use and/or how to use the Infringing Device while selling products. One example of this is the promotional material found on Defendants' website (https://vimeo.com/1202500403?fl=pl&fe=sh; https://theonehorse.com/one-horse-to-launch-one-horse-express-rifle-in-collaboration-with-atrius-development-group/):



## ONE HORSE TO LAUNCH ONE HORSE EXPRESS RIFLE IN COLLABORATION WITH ATRIUS DEVELOPMENT GROUP

Croco Rasel    June 19, 2026    12:28 am

**One Horse to Launch One Horse Express Rifle in Collaboration With Atrius Development Group**

**BROWNSTOWN, Ind., June 19, 2026** — One Horse, a rapidly growing American firearms

Manufacturer; Today, announced the launch of its exclusive One Horse Express Rifle—the first

factory-built production rifle equipped with Atrius Development Group's revolutionary Forced

Reset Selector (FRS).

Rather than simply adding components to an existing platform, the One Horse Express is

designed, assembled and tuned from the ground up as a complete system to deliver maximum

reliability, consistency and performance right out of the box.

The One Horse Express key features:

- Atrius Development Group FRS (Single-Sided)
- THRiL RTG (Rugged Tactical Grip)
- THRiL CCS (Combat Competition Stock)
- Breek Arms Warhammer Mod2
- 16-inch CrMoV, nitride, SOCOM-profile barrel with 1:8 twist, dimpled
- 15-inch Express-Lock Handguard System with enhanced lock-up
- Low-profile, staked, steel gas block, mid-length gas system
- H2 buffer system

The One Horse Express will be available beginning June 19, 2026.

"This rifle was built to run," said Jeremy Hammons, CEO of One Horse. "The One Horse Express represents a significant step forward for One Horse and for production rifle manufacturing. This collaboration pairs Atrius' selector technology with a rifle platform engineered, assembled and tuned as a complete system from day one. Atrius and One Horse share the same standard: disciplined manufacturing, dependable performance and a finished product the end user can trust and be proud to own."

"Since day one, the Atrius Forced Reset Selector has set the standard for what is possible in this industry," said Ryan Spadafore, CEO and founder of Atrius Development Group. "Partnering with One Horse is the kind of move that changes the conversation. They represent what we respect in American manufacturing: family ownership, precision-driven production and a commitment to performance. This launch is more than a new rifle. It is an example of the industry working together to move gun culture in a positive direction. We're proud to stand alongside One Horse as we take that next step together. Together we win."

76.    On information and belief, Defendants know or should know that such activities induce others to directly infringe at least claim 38 of the '403 Patent.

77.    On information and belief, Defendants also contribute to the infringement of the '403 Patent by others, including their customers. Acts by Defendants that contribute to the infringement of others include, but are not limited to, the sale, offer for sale, and/or importation by Defendants of the components of the Infringing Device, such as the trigger assembly or the cam or cam lever arm. The components are not suitable for substantial noninfringing use as they are specially designed and adapted to be used in a fire control unit to mechanically reset a trigger mechanism and infringe the '403 Patent.

78.    Defendants have engaged in egregious infringement behavior with knowledge of the '403 Patent, which has been duly issued by the USPTO, and is presumed valid. On information and belief, Defendants have known or should have known that their actions constituted and continue to constitute infringement of the '403 Patent and that the '403 Patent is valid at least through the service of this complaint. Defendants could not reasonably or subjectively believe that their actions do not constitute infringement of the '403 Patent, nor could they reasonably or subjectively believe that the patent is invalid. Despite that knowledge and subjective belief, and the objectively high likelihood that their actions constitute infringement, Defendants have continued their infringing activities. As such, Defendants willfully infringe the '403 Patent.

79.    By their actions, Defendants have injured Plaintiffs and are liable to Plaintiffs for infringement of the '403 Patent pursuant to 35 U.S.C. § 271.

80.    By their actions, Defendants' infringement of the '403 Patent has irreparably injured Plaintiffs. Unless such infringing acts are enjoined by this Court, Plaintiffs will continue to suffer additional irreparable injury.

81.    By their actions, Defendants' infringement of the '403 Patent has damaged and continues to damage, Plaintiffs in an amount yet to be determined.

82.    Defendants' infringement of the '403 patent is exceptional and entitles Plaintiffs to attorneys' fees and costs incurred in prosecuting this action under 35 U.S.C. § 285.

83.    Defendants' acts of infringement are willful and for no other purpose than to deliberately and irreparably harm Plaintiffs' business, sales, reputation, and good-will.

84.    Plaintiffs have been substantially harmed by Defendants' infringing activities and are entitled to relief including but not limited to a preliminary injunction, a permanent injunction, damages adequate to compensate for the infringement, being lost profits or no less than a reasonable royalty, treble damages, and attorneys' fees.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that this Court enter judgment against Defendants as follows:

a.    Each of the Asserted Patents has been and continues to be infringed by Defendants;

b.    Defendants' infringement of each of the Asserted Patents has been, and continues to be, willful;

c.    Each of the Asserted Patents is enforceable and not invalid;

d.    A preliminary injunction enjoining Defendants and their principals, agents, successors, assigns, attorneys, servants, affiliates, employees, divisions, branches, subsidiaries, parents, and all others acting in active concert therewith from infringement or contributing to the infringement of each of the Asserted Patents during the pendency of this case; or other such equitable relief as the Court determines is warranted;

e.    A permanent injunction enjoining Defendants and their principals, agents, successors, assigns, attorneys, servants, affiliates, employees, divisions, branches, subsidiaries,

parents, and all others acting in active concert therewith from infringement or contributing to the infringement of each of the Asserted Patents; or other such equitable relief as the Court determines is warranted;

f.       An award of damages adequate to compensate Plaintiffs for the infringement of each of the Asserted Patents that has occurred, together with pre-judgment interests and costs, post-judgment interests and costs, and an accounting;

g.       An award of all other damages permitted by 35 U.S.C. § 284, including increased damages up to three times the amount of compensatory damages found;

h.       An award of all profits received by Defendants from sales and revenues of any kind made as a result of their trademark infringement and unfair competition;

i.       An award of all damages sustained by Plaintiffs as a result of Defendants' infringement, including ascertainable damages, the costs incurred by Plaintiffs for the costs for this action, and Plaintiffs' reasonable attorneys' fees;

j.       A finding that this action is an exceptional case under 35 U.S.C. § 285, and an award to Plaintiffs of their costs and attorneys' fees incurred in this action; and

k.       Any and all other relief, at law or equity, to which Plaintiffs may show themselves to be entitled or which this Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiffs, under Rule 38 of the Federal Rules of Civil Procedure, request a trial by jury of any issues so triable by right.

DATED: June 23, 2026                      Respectfully submitted,

*/Glenn D. Bellamy/*
Glenn D. Bellamy (Ohio Bar No. 0070321)
**WOOD HERRON & EVANS LLP**

600 Vine Street, Suite 2800
Cincinnati OH 45202
E-mail: gbellamy@whe-law.com
Tel: (513) 707-0243
Fax: (513) 241-6234

Matthew A. Colvin (Pro Hac Vice forthcoming)
Texas Bar No. 24087331
**FISH & RICHARDSON P.C.**
1717 Main Street, Suite 5000
Dallas, TX 75201
E-mail: colvin@fr.com
Tel: (214) 747-5070
Fax: (214) 747-2091

*Attorneys for Plaintiffs*
*ABC IP, LLC, and Rare Breed Triggers, Inc.*